# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7096 | **DATE** | 2/23/2004 |
| **CASE TITLE** | | Schwartz vs. National Van Lines, Inc. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to transfer is denied.

*/s/ Amy J. St. Eve*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | FEB 2 4 2004 date docketed | | |
| ✓ | Docketing to mail notices. | | | | 20 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | GMA docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | on FEB 23 '04 11:39 | date mailed notice | | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOFIA SCHWARZ, )
                Plaintiff, )
)    No. 03 C 7096
v. )
)    Judge St. Eve
NATIONAL VAN LINES, INC., )
DWAYNE SCHIESSER, and )
APEX RELOCATION SPECIALISTS, INC., )
)
                Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Sofia Schwarz filed an eight-count complaint against Defendants National Van Lines, Inc. ("National"), Dwayne Schiesser, and Apex Relocation Specialists, Inc. ("Apex"), alleging breach of contract in a bill of lading under 49 U.S.C. § 14706 (the "Carmack Amendment") (Count I), statutory claims under section 1961 of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts VII and VIII), conversion (Count II), intentional infliction of emotional distress (Count III), negligent infliction of emotional distress (Count IV), breach of the implied covenant of good faith and fair dealing (Count V), and constructive fraud based on breach of fiduciary duty (Count VI). In response to Schwarz's complaint, National filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). For the reasons stated herein, Defendant's motion to transfer is denied.

## BACKGROUND

Schwarz is a citizen of the United States and of Oregon. Defendant National is an Illinois corporation. (R. 9-1, Def.'s Mem. Supp. Mot. to Transfer Venue, Ex. B at 3.) Defendant

Schiesser is a citizen of the United States and of Texas. (*Id.* at 3.) Defendant Apex is a defunct Texas corporation. (*Id.*)

I. **Events Surrounding Schwarz's Move from Scottsdale to Salem**

In December of 2000, Schwarz hired National to move her belongings from Scottsdale, Arizona to Salem, Oregon. (R. 11-1, Pl.'s Opp'n to Def.'s Mot. to Transfer Venue at 1); (R. 9-1, Def.'s Mem. Supp. Mot. to Transfer Venue at 1.) National's disclosed agent, Apex, through Schiesser, Apex's alleged owner and operator, picked up Schwarz's belongings in Scottsdale, Arizona. (R. 3-1, Pl.'s First Am. Compl. ¶¶ 4-5, 28-33.) Central Moving and Storage ("Central") acted as National's agent in Arizona, coordinating and facilitating Apex and Schiesser's pickup of Schwarz's belongings on December 31, 2000. (*Id.* ¶¶ 12-17, 24-29.)

Schwarz's belongings were scheduled to arrive in Salem, Oregon between December 30 and January 10, 2001, but did not arrive within the scheduled delivery window. (R. 11-1, Pl.'s Opp'n to Def.'s Mot. to Transfer Venue at 2.); (R. 9-1, Def.'s Mem. Supp. Mot. to Transfer Venue, Ex. C.) When January 10, 2001 passed with no sign of her belongings, Schwarz began to search for their whereabouts. (R. 11-1, Pl.'s Opp'n to Def.'s Mot. to Transfer Venue at 2.) Schwarz claims that she repeatedly called National in Illinois while her belongings were missing. (R. 3-1, Pl.'s First Am. Compl. ¶¶ 41, 59.)

On March 18, 2001, a third party informed Schwarz's sister that Schwarz's belongings were in Weatherford, Texas. (*Id.* at ¶ 61.) National finally delivered Schwarz's belongings on April 22, 2001, without charge. (*Id.* ¶ 78.)

II. **Schwarz's Insurance Claim and the Ensuing Litigation**

On May 16, 2001, Schwarz filed a formal insurance claim with National for costs resulting from the late delivery of her belongings. (R. 3-1, Pl.'s First Am. Compl. ¶ 78.) On

2

October 12, 2001, National rejected a portion of her claim and offered to settle the remainder of the claim. (*Id.* ¶ 93.) On August 29, 2003, Schwarz's attorney sent National a draft complaint that Schwarz contemplated filing in the United States District Court for the Northern District of Illinois. (R. 11-1, Pl.'s Opp'n to Def.'s Mot. to Transfer Venue at 2.) National responded by filing a declaratory judgment action in the United States District Court for the District of Arizona on September 9, 2003 (the "Arizona Action").

Schwarz filed her complaint in this Court on October 7, 2003. On December 9, 2003, Schwarz moved to dismiss National's Arizona Action for lack of personal jurisdiction and improper venue, or alternatively, to transfer the case to the Northern District of Illinois ("Illinois Action"). (R. 11-1, Pl.'s Opp'n to Def.'s Mot. to Transfer Venue at 3.)

## ANALYSIS

### I. The First-to-File Rule

When two similar actions are filed, the general rule favors the forum of the first-filed suit. *MLR, LLC v. U.S. Robotics Corp.*, No. 02 C 2898, 2003 WL 685504, *1 (N.D. Ill., Feb 26, 2003) (citations omitted); *Barrington Group, Ltd. v. Genesys Software Systems, Inc.*, 239 F. Supp. 2d 870, 873 (E.D. Wis. 2003) (citing *Warshawsky & Co. v. Arcata Nat. Corp.*, 552 F.2d 1257, 1263 (7th Cir. 1977)). Under this "first to file" rule, district courts normally stay or transfer a federal suit "for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court."[1] *Serlin v. Arthur Anderson Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (citations omitted); *Barrington Group*, 239 F. Supp. 2d at 873 (citations omitted).

The Seventh Circuit, however, does not rigidly adhere to a "first to file" rule, *Trippe Mfg.*

---

[1] The Court, at its discretion, determines whether one action duplicates another. *Serlin v. Arthur Anderson Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (citations omitted). Duplicative suits generally involve the same claims and parties. *Id.*

3

*Co. v. American Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (citations omitted). Second-filed actions may proceed where favored by the interests of justice. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-750 (7th Cir. 1987). Similarly, courts refuse to enforce the first to file rule where forum shopping motivated the first-filed action or the first-filed action constitutes an "improper anticipatory filing" made under threat of an imminent suit and asserting the mirror-image of that suit in another district. *Barrington Group*, 239 F. Supp. 2d at 873; *MLR*, 2003 WL 685504 at *1 (citations omitted).

The Declaratory Judgment Act is not a tool with which potential litigants may secure a delay or choose the forum. *Schumacher Elec. Corp. v. Vector Products, Inc.*, 286 F. Supp. 2d 953, 955 (N.D. Ill. 2003) (citations omitted). Declaratory judgment actions brought in the face of clear threats of suit and seeking determinations that no liability exists will be closely scrutinized as potentially improper anticipatory filings if the other party proceeds to file. *Barrington Group*, 239 F. Supp. 2d at 873-874 (citing *Tempco Elec. Heater Corp.*, 819 F.2d at 749-750).

Here, National filed the Arizona Action shortly after Schwarz provided National with a copy of the complaint that she anticipated filing in Illinois. Since National filed its declaratory judgment action in the face of a clear threat that Schwarz would sue, the Court will treat the present case as an exception to the first to file rule. National's declaratory judgment action appears to be an attempt to trump Schwarz's choice of forum. Further, as addressed below, the interests of justice counsel against invoking the first to file rule here.

**II.    National's Motion to Transfer**

Assuming that venue is proper in a federal district court, "[f]or the convenience of parties and witnesses, in the interest of justice, [that] district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer

under section 1404(a) is appropriate where the moving party demonstrates that (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). The movant has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-220 (7th Cir. 1986). In assessing a motion to transfer, the Court must consider the statutory factors in light of all of the circumstances of the case. *Id.* at 219. The weight accorded to each factor is committed to the sound discretion of the Court. *Id.*

### A. Venue

Where a party moves to transfer venue pursuant to section 1404(a), the burden is on the movant to establish that venue is proper in the transferee court. *IP Innovation*, 289 F. Supp. 2d at 954 (citations omitted). To establish venue, a plaintiff need only demonstrate that a "substantial part" of the events or omissions giving rise to the claim occurred within the forum district, not that a majority of the events took place there.[2] *Pasulka v. Syke*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001). The test for venue under 28 U.S.C. § 1391 focuses on the location of the events giving rise to the cause of action. *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 913 (N.D. Ill. 2002). To be "substantial," the events that occurred in the forum district must be a part of the historical predicate of the claim. *Id.* at 914.

---

[2] Where, as here, jurisdiction is not founded solely on diversity of citizenship, a plaintiff may bring suit "in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391.

Even when the defendant never personally enters the forum district, venue can nonetheless be appropriate in that district. *Master Tech*, 181 F. Supp. 2d at 913. Telephone conversations and correspondence can support venue under section 1391(b)(2) depending on the nature of the contacts and their relationship to the claim. *Id.* at 913-914.

Here, neither party disputes that venue is proper in the Northern District of Illinois. Venue also is proper in the District of Arizona. Schwarz entered into the contract in Arizona, and the original location of Schwarz's belongings in and the shipping of these belongings from Arizona form a part of the historical predicate of the claim. If Schwarz had not entered into the contract for the shipment of her belongings or if National's agent had not picked up her belongings, the sequence of events culminating in Schwarz's complaint would not have taken place.

### B. Jurisdiction in the District of Arizona

The Arizona long-arm statute provides for personal jurisdiction co-extensive with the limits of federal due process. *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Due process requires that nonresident defendants have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A court's exercise of personal jurisdiction over a nonresident defendant may be either general or specific. *Id.* If the defendant's activities in the state are substantial or continuous and systematic, a court may assert general jurisdiction over the defendant even if the cause of action is unrelated to those activities. *Id.* (citation omitted). Specific jurisdiction originates in cases "arising out of or related to the defendant's contacts with the forum." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v.*

6

*Hall*, 466 U.S. 408, 416 (1984)). Specific jurisdiction arises when the underlying suit relates to the defendant's contacts with the forum state. *RAR, Inc.*, 107 F.3d at 1277. The defendant's connections with the forum state must be substantial enough that the defendant should reasonably anticipate being haled into court there. *Id.* (citing *World-Wide Volkswagen, Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

National does business in all states, and has accordingly designated an agent for service of process in every state, including Arizona. (R. 15-1, Def.'s Reply to Pl.'s Opp. to Def.'s Mot. to Transfer Venue at 3.) By designating an agent for service of process in the State of Arizona, National has subjected itself to general jurisdiction in the State of Arizona. Accordingly, the District of Arizona has jurisdiction over National.

Because Apex and Schiesser have not subjected themselves to general jurisdiction in the State of Arizona, the District of Arizona's jurisdiction depends on whether specific jurisdiction exists. Here, the connection between both Apex and Schiesser and the State of Arizona began when Apex and Schiesser accepted the business of transporting Schwarz's belongings out of the forum, which required coordination with National's agents within Arizona. Apex and Schiesser created substantial contacts with the State of Arizona when they entered the state to pick up Schwarz's belongings. Because Schwarz's goods were picked up in Arizona, Apex and Schiesser cannot claim that they could not reasonably anticipate being haled into court in the District of Arizona. Accordingly, the District of Arizona has specific jurisdiction over both Apex and Schiesser, and jurisdiction would be proper over Schwarz's complaint in the District of Arizona.

### C. Convenience and the Interests of Justice

In analyzing the third prong of section 1404(a), the Court must examine factors relating to both convenience and the interests of justice. Five factors bear on this prong: (1) the plaintiff's choice of forum, (2) the locations of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion" of the court. *Coffey*, 796 F.2d at 219-220. Transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for another party. *Vandeveld*, 877 F. Supp. at 1167. Here, National "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient" than the transferor court. *Coffey*, 796 F.2d at 219-220. National has failed to meet this burden.

#### 1. Plaintiff's Choice of Forum

A plaintiff's choice of forum is entitled to substantial weight under section 1404(a), particularly where it is also the plaintiff's home forum. *Id.* Where the plaintiff's chosen forum is not the location of the material events, however, it is entitled to less deference. *Tingstol Co. v. Rainbow Sales, Inc.*, 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998). It is appropriate, therefore, to discuss choice of forum together with the location of material events. *Truserv Corp. v. Neff*, 6 F. Supp. 2d 790, 793-794 (N.D. Ill. 1998).

#### 2. Locations of the Material Events

Here, the parties dispute where the material events took place. Schwarz claims that the breach of contract occurred not in Arizona, but in Oregon, when National failed to deliver Schwarz's belongings within the specified delivery window. Schwarz also argues that nearly all

of National's conduct giving rise to Schwarz's claims took place in Illinois, including all of the communications alleged to have caused Schwarz's emotional distress, and the omissions resulting in the constructive fraud and the breach of implied covenant of good faith and fair dealing.

National, on the other hand, argues that the contract was partially performed in Arizona, and that the breach occurred when Schiesser exercised unauthorized control over Schwarz's belongings. *Id.* at 8. National also argues that Schwarz's entire cause of action is contingent upon the existence of the contract to ship Schwarz's belongings, focusing on the negotiation, execution, and partial performance of the contract within the District of Arizona.

In this case, the events material to the various claims took place in many different locations. Accordingly, the location of the material events is not dispositive.

### 3. Relative Ease of Access to Sources of Proof

Schwarz argues that the existence of "potentially voluminous documentary evidence" located in the Northern District of Illinois weighs in favor of denying transfer. National's response indicates that the documentary evidence relating to Schwarz's claim totals approximately 450 pages, and National indicated that it would copy and provide those documents to the plaintiff. Accordingly this factor is inapposite in determining whether a transfer is warranted.

### 4. Convenience of the Parties

Neither party argues that either venue would be inconvenient. Accordingly, this factor is not determinative.

### 5. Convenience of the Witnesses

The convenience of witnesses is often viewed as the most important factor in the transfer balance. *Tingstol*, 18 F. Supp. 2d at 933. To determine the convenience to the witnesses, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case. *Id.* (citations omitted). The court looks at the persons who will be required to take time away from their respective home bases and activities to deal with trial preparation and trial. *Riviera Fin. v. Trucking Servs,, Inc.*, 904 F. Supp. 837, 839 (N.D. Ill. 1995).

Both National and Schwarz dispute the convenience of each forum. Schwarz argues that the parties have collectively identified at least four Illinois witnesses, and claims that National has padded its anticipated witness list. Schwarz also claims that two out of every three of the potential RICO witnesses presently identified reside closer to Chicago than Phoenix.[3] Schwarz also argues that travel to Chicago is more convenient than travel to the District of Arizona. National responds that the majority of its witnesses reside closer to the District of Arizona than the Northern District of Illinois.[4]

Regardless of the venue, a significant number of anticipated witnesses will be forced to travel to take part in the proceedings in this case. Although Schwarz argues that Chicago is closer to Texas than Phoenix and that there are twice as many flights from Texas to Chicago than there are from Texas to Phoenix, these minor differences fail to impact the convenience of the witnesses. Any difference in the inconvenience that results from either forum is negligible, and

---

[3] Schwarz names seventeen RICO witnesses, five that reside in California, Oregon, and Arizona, while the residence of another is unknown. (R. 15-1, Def.'s Reply to Pl.'s Opp. to Def.'s Mot. to Transfer Venue at 10 n.5.)

[4] National's anticipated witness list, which includes Schwarz and her son, identifies nineteen anticipated witnesses. (R. 15-1, Def.'s Reply to Pl.'s Opp. to Def.'s Mot. to Transfer Venue 1 D.) Six of those witnesses reside in Oregon, five reside in Texas, three reside in Arizona, three reside in Illinois, and two reside in California. *Id.*

therefore this factor - normally one of the most important factors in determining the convenience of the proposed transferee venue - does not tilt the convenience scale in either direction.

2.   **Interests of Justice**

The "interest of justice" analysis relates to the efficient functioning of the courts, not the merits of the underlying dispute. *Coffey*, 796 F.2d at 221. The "interests of justice" may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result. *Id.* at 220. Factors traditionally considered in an "interests of justice" analysis include determining where the litigants are most likely to receive a speedy trial and having judges familiar with the applicable law try the case. *Vandeveld*, 877 F. Supp. at 1167 (citing *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989)).

a.   **Likelihood of a Speedy Trial**

Two statistics bear significant relevance when analyzing the likelihood of a speedy trial. *Tingstol*, 18 F. Supp. 2d at 934 (N.D. Ill. 1998) (citations omitted). The first is the median number of months from filing to disposition, and the second is the median number of months from filing to trial. *Id.*

The 2002 Federal Court Management Statistics show that the median number of months from filing to disposition of a civil case in the Northern District of Illinois is 5.5 months, whereas the District of Arizona disposes of civil actions in a median 10.7 months. (R. 9-1, Def.'s Mem. Supp. Mot. To Transfer Venue, Ex. E.) Similarly, the median number of months between filing a civil action and going to trial in the Northern District of Illinois is 26.0 months, whereas the filing to trial time for a civil action in the District of Arizona is 37.8 months. *Id.* Accordingly, the likelihood of a speedy trial is greater in the Northern District of Illinois, and this "interest of justice" factor weighs in favor of denying National's motion.

### b. Familiarity With Applicable Law

The law of the transferor district continues to apply to an action following its transfer under section 1404(a). *Coffey*, 796 F.2d at 221. Once the plaintiff has exercised her choice of forum by selecting a permissible forum, the state law of that forum governs the action and remains controlling, even if the action is transferred to a more convenient forum. *Id.* Certainly, the Northern District of Illinois is more familiar with Illinois law, which governs five of eight counts in the complaint, than the District of Arizona. *See Truserv*, 6 F. Supp. 2d at 793 (stating that the Northern District of Illinois is definitely more familiar with Illinois law than the Western District of Pennsylvania). Accordingly, this factor favors denying the defendant's motion to transfer venue and retaining the action in the Northern District of Illinois.

### D. Balancing the Factors Impacting the Motion to Transfer

Venue is proper in the Northern District of Illinois, and venue and jurisdiction are both proper in the District of Arizona. None of the convenience factors weigh significantly in favor of transferring Schwarz's complaint to the District of Arizona. Indeed, the slight preference for the Plaintiff's chosen forum is the most significant factor with bearing on the convenience analysis. Furthermore, the interests of justice - both the likelihood of a speedy trial and the familiarity with the applicable law - weigh in favor of this Court denying National's motion. Accordingly, National has failed to carry its burden of showing that the District of Arizona is clearly more convenient than this Court.

## CONCLUSION

For the foregoing reasons, National's motion to transfer venue is denied.

Dated: February 23, 2004

_____
Amy J. St. Eve
United States District Court Judge